**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNI-SYSTEMS, LLC,**

            Plaintiff,

vs.

**ROSSETTI INC., et al.**

            Defendants.

_____/

**Civil Action No. 2:20-CV-10953-BAF-APP**
Hon. Bernard A. Friedman
Magistrate Judge Anthony P. Patti

Transferred in from E.D.N.Y.
Case No. 1:17-cv-00147-KAM-CLP

**THIRD AMENDED COMPLAINT**

Uni-Systems hereby files this Third Amended Complaint for Patent Infringement against Defendant Rossetti. Uni-Systems further alleges as follows:

**THE PARTIES**

1. Plaintiff Uni-Systems, LLC ("Uni-Systems" or "Plaintiff") is a Minnesota limited liability company with its headquarters at 4600 Lake Road, Minneapolis, Minnesota. Cyril Silberman is the sole member of Uni-Systems and has been a resident of the State of Florida at least since 2008.

2. Upon information and belief, Defendant Rossetti Inc. is a corporation incorporated under the laws of the state of Michigan with its principal place of business at 160 West Fort Street, Detroit, Michigan 48226.

3. Upon information and belief, Defendant Matthew L. Rossetti Architect, P.C. ("Matthew Rossetti P.C.") is a professional corporation incorporated under the

laws of the state of New York with a place of business at 160 West Fort Street, Detroit, Michigan 48226.

4.     Defendants Rossetti Inc. and Matthew Rossetti P.C. are referred to in this Third Amended Complaint collectively as "Rossetti."

## JURISDICTION AND VENUE

5.     This is a civil action for infringement under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Upon information and belief, Rossetti Inc. is domiciled in the state of Michigan and has a principal place of business in this judicial district.  Rossetti Inc. has also voluntarily submitted to the jurisdiction of this Court by seeking to transfer to, and litigate this action in, this judicial district.  Therefore, this Court has personal jurisdiction over Rossetti Inc.

7.     Upon information and belief, Matthew Rossetti P.C. transacts business and has continuous and systematic contacts in this district, maintains an ongoing physical presence within this district, has purposefully availed itself of the privileges and benefits of the laws of the state of Michigan, and/or has engaged in acts, including patent infringement, within this district given rise to this action and causing injury to Uni-Systems.  For example, Matthew Rossetti P.C. has averred in this action that, between 2013 and 2018 for work with the United States Tennis

Association National Tennis Center relevant to this action, it delegated architectural work to employees of Rossetti Inc. located in this judicial district, and that Matthew Rossetti P.C. shares a physical office location with Rossetti Inc. in this judicial district.  Matthew Rossetti P.C. has also voluntarily submitted to the jurisdiction of this Court by seeking to transfer to, and litigate this action in, this judicial district.  Therefore, this Court has personal jurisdiction over Matthew Rossetti P.C.

8.     Venue is proper in this District under 28 U.S.C. § 1400(b) with respect to Rossetti at least because both Rossetti Inc. and Matthew Rossetti P.C. have admitted in this action that venue is proper in this district, Rossetti Inc. and Matthew Rossetti P.C. have committed acts of infringement in this judicial district, and Rossetti Inc. and Matthew Rossetti P.C. purport to share a regular and established physical place of business in this judicial district, located at 160 West Fort Street, Detroit, Michigan 48226.

## FACTUAL BACKGROUND

### A.     Introduction

9.     For nearly two decades, Plaintiff Uni-Systems, LLC ("Uni-Systems") has been the leading designer of retractable roof systems in the United States, having designed and implemented retractable roof systems for major stadiums throughout the country.  Uni-Systems owns a portfolio of United States patents directed to

retractable roof technology. This intellectual property reflects Uni-Systems' position as the industry leader in retractable roof innovation.

10. This case concerns the knowing and admitted infringement of two Uni-Systems' patents by Defendants Rossetti Inc. and Matthew L Rossetti Architect, P.C. who served as architect for the construction of, *inter alia*, retractable roofs over Arthur Ashe Stadium ("Ashe Retractable Roof") and construction of the Louis Armstrong Stadium ("Armstrong Retractable Roof") at the USTA Billie Jean King National Tennis Center (the "National Tennis Center") in Flushing, New York, home of the U.S. Open, for United States Tennis Association Incorporated ("USTA") and USTA National Tennis Center Incorporated ("USTA NTC").

11. In August 2013, while still early in the design process for the Ashe Retractable Roof, Rossetti was informed of Uni-Systems patents and other intellectual property now at issue. Then, at least three months before the roof was tested and used for the August 2016 U.S. Open, and at least seven months before Uni-Systems filed suit in January 2017, Uni-Systems sent a letter in May 2016 notifying Rossetti that its acts, and the acts of other entities engaged in the construction and use of the Ashe Retractable Roof, infringed specific Uni-Systems' patents. Rossetti ignored requests to meet to discuss a resolution of the dispute and did not change the Ashe Retractable Roof design so as to avoid infringement. Thus, Uni-Systems was forced to file suit against Rossetti.

12.     Shortly thereafter, Rossetti admitted in internal communications that the design for the Ashe Retractable Roof infringed Uni-Systems' patents.

13.     While Ashe Stadium was being prepared for its reopening with its new retractable roof, Rossetti was also designing the Armstrong Retractable Roof. Realizing that the Armstrong Retractable Roof had the same or similar patented retractable roof design as the Ashe Retractable Roof, Rossetti attempted to hide or mask infringing elements of the design in construction drawings, but failed to actually implement a change to the design that would avoid infringement.  Thus, like the Ashe Retractable Roof, the design for the Armstrong Retractable Roof infringes Uni-Systems' patented technology.

**B.     Uni-Systems Company Background**

**1.     Uni-Systems Is the Leading Designer of Retractable Roof Systems**

14.     Founded in 1968, Uni-Systems is a global leader in the design, fabrication, installation, and management of kinetic architecture.   It creates transformative, mechanized structures that change with climate, need, or purpose. Originally established to develop moveable architecture in the aerospace industry, Uni-Systems expanded into the military, construction, entertainment, and sports industries.  From movable gates to airline hangar doors and large-body docking equipment, retractable roofs, and moving walls, Uni-Systems designs the

mechanization systems that permit large structures to move.  Indeed, the very term "kinetic architecture" was coined by Uni-Systems.

15.     Uni-Systems is the leading designer of retractable roof systems in the United States.  It has designed, fabricated, and installed the most prominent retractable roofs over the past decade, including those at Minute Maid Ballpark and Reliant Stadium in Houston, Texas; Marlins Ballpark in Miami, Florida; Lucas Oil Stadium in Indianapolis, Indiana; Cowboys Stadium near Dallas, Texas; and University of Phoenix (Cardinals) Stadium in Glendale, Arizona.

16.     Rossetti's President, Matthew Rossetti, referred to Uni-Systems and Walter P. Moore in 2009 as the world's best moveable stadium roof team.  Similarly, in 2012, USTA called Uni-Systems the best in class in the industry.

### 2.     Uni-Systems' Patents-In-Suit Reflect Retractable Roof Innovation

17.     Uni-Systems' intellectual property reflects its position as the industry leader in retractable roof innovation.  Uni-Systems owns a portfolio of pioneering United States patents in this field, including but not limited to United States Patent Nos. 6,789,360 and 7,594,360.

18.     On September 14, 2004, U.S. Patent No. 6,789,360 (the "Retention Mechanism patent"), entitled *Retractable Roof System for Stadium*," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct

copy of the Retention Mechanism patent is attached as Exhibit A to this Third Amended Complaint.

19.     Uni-Systems is the owner, by assignment, of all rights, title, and interest in the Retention Mechanism patent.

20.     Uni-Systems developed the Retention Mechanism patent, including its disclosure of the tied arch structural system, based on its recognition of the need for an improved stadium roof design that was lighter in weight, less bulky, and less likely to interfere with the view of spectators within the stadium than those allowed by conventional stadium roof designs.

21.     On September 29, 2009, U.S. Patent No. 7,594,360 (the "Lateral Release patent"), entitled "*Lateral Release Mechanism for Movable Roof Panels*," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the Lateral Release patent is attached as Exhibit B to this Third Amended Complaint.

22.     Uni-Systems is the owner, by assignment, of all rights, title, and interest in the Lateral Release patent.

23.     Uni-Systems developed the Lateral Release patent based on its recognition of the need for an improved design for a retractable roof and transport mechanism that was compact, lightweight, reduced the structural requirements for the supporting structure, and capable of maintaining its stability and alignment both

during normal use as well as in extreme conditions more capably than comparable mechanisms previously known.  Uni-Systems developed the Lateral Release patent in connection with Uni-Systems' design and construction of the Cardinals Stadium Retractable Roof.

24.    The Retention Mechanism patent and the Lateral Release patent (collectively, the "Patents-in-Suit") are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

### C.    The Arthur Ashe Stadium Retractable Roof

#### 1.    Rossetti's Involvement in the Construction of the Arthur Ashe Stadium Retractable Roof

25.    USTA and USTA NTC began investigating a retractable roof for Arthur Ashe Stadium as early as 2005.  Rossetti sought to design the Ashe Retractable Roof and turned to Uni-Systems for help with the roof mechanization.

26.    In September 2008, Rossetti submitted to USTA and USTA NTC a document titled Fixed and Operable Roof Research for USTA ("Roof Research"). Rossetti's Roof Research illustrates Rossetti's knowledge of multiple Uni-Systems retractable stadium roof designs and that Uni-Systems holds patents for these designs.  For example, Rossetti's Roof Research document states that Uni-Systems has ten patents and five pending applications covering the operation of movable structures and specific mechanisms, including the patented lateral release mechanism in retractable roofs.

27.     USTA and USTA NTC hired Hunt Construction Group, Inc. ("Hunt") to serve as the design-builder for the Ashe Retractable Roof.  As the design-builder for the Ashe Retractable Roof, Hunt contracted with Matthew Rossetti P.C. for design activities and responsibilities.  Matthew Rossetti P.C. served as the official project architect for the Ashe Retractable Roof.  Matthew Rossetti P.C. worked with Rossetti Inc. to provide design and architectural services for the Ashe Retractable Roof.

28.     On or about February 2012, USTA, USTA NTC, and Rossetti initially selected a folding fabric design for the Ashe Retractable Roof.  This folding fabric roof design was very different from the bi-parting rigid design that was ultimately chosen for the Ashe Retractable Roof.

29.     From about March 2012 to May 2013, Rossetti used the folding fabric roof design as the basis for many calculations for the Ashe Retractable Roof, including HVAC and natural ventilation.

30.     Rossetti discovered drawbacks in the proposed folding fabric roof design, including that the folding fabric roof could not be deployed during rainy or windy conditions.

31.     Around May 2013, with looming contractual deadlines, Rossetti and Hunt began looking for alternatives to the folding fabric roof design for the Ashe Retractable Roof.  The Schematic Design deadline for the Ashe Retractable Roof

was August 9, 2013.  The Design Development deadline for the Ashe Retractable Roof was October 31, 2013.  Failure to meet these deadlines would jeopardize both the Ashe Retractable Roof's readiness for the 2016 U.S. Open and Rossetti's relationship with its customer, the USTA.

32.    On June 4, 2013, Hunt's Ken Johnson proposed a bi-parting rigid retractable roof design to Rossetti's President Matt Rossetti and Principal Dave Richards.  Mr. Johnson referred to his conceptual drawings of the bi-parting rigid retractable roof design as a smaller version of the Cardinals Stadium—the same retractable roof designed by Uni-Systems.  Shortly thereafter, Rossetti adopted this bi-parting rigid retractable roof design for the Ashe Retractable Roof.

33.    On July 3, 2013, Rossetti's Dave Richards asked Hunt's Mark Flandermeyer for the drawings for a similar bi-parting rigid retractable roof, including details of the access, mechanization, the perimeter of the moving panel, where the panels meet, and everything necessary to successfully implement the roof. On July 9, 2013, Mr. Flandermeyer responded to Mr. Richards' inquiry and provided pictures of the Cardinals Stadium retractable roof mechanization.  Mr. Flandermeyer told Mr. Richards that the Cardinals Stadium mechanization documents are Uni-Systems proprietary information.

34.    The next month, or about August 26, 2013, John Lanari, at the time a former Uni-Systems employee, reviewed blueprints of the Ashe Retractable Roof

and notified Hunt that Uni-Systems held the patent for the linear bearing depicted in the blueprints.  This was in reference to the Lateral Release patent, which Uni-Systems developed in connection with its work on the Cardinals Stadium roof.

35.   On August 26, 2013, Hunt informed Rossetti about Mr. Lanari's notification and asked Rossetti if Uni-Systems held the patent for the depicted linear bearing.

36.   Upon information and belief, despite Hunt's notification, Rossetti failed to investigate Mr. Lanari's claims or Uni-Systems' patents, including those developed in connection with the Cardinals stadium roof.

37.   Thus, as early as 2013, in an effort to save time and stay on schedule, Rossetti ignored concerns about Uni-Systems proprietary information and patents, and proceeded to copy key structural and mechanical details from the Cardinals Stadium retractable roof, including the patented retention and lateral release mechanisms, for the Ashe Retractable Roof.

38.   The work Rossetti performed as architect of record was instrumental to the design and construction of the Ashe Retractable Roof.

39.   Rossetti was responsible for the design and contract administration of the Ashe Retractable Roof.

40.   Uni-Systems placed Rossetti on notice of its infringement of its patents, including the Lateral Release patent on May 24, 2016.

41.     The Ashe Retractable Roof was completed and operational before commencement of the 2016 U.S. Open Tennis Tournament in August 2016.

42.     Throughout that U.S. Open tournament, the press and commentators praised the Ashe Retractable Roof to the millions of people watching on television.

### 2.     The Ashe Retractable Roof Design Infringes the Patents-in-Suit

43.     The following Ashe Retractable Roof blueprints reveal that the Ashe Retractable Roof design infringes Uni-Systems' Patents-in-Suit.

44.     For example, based on Uni-Systems' current investigation, the Ashe Retractable Roof design infringes at least Claim 1 of the Retention Mechanism patent:

| USTA Retractable Roof Project—Arthur Ashe Stadium |
| --- |
| **1.  A stadium roof assembly, comprising:** |
| The drawings for the USTA Retractable Roof Project at Arthur Ashe Stadium illustrate that the project involves the construction of a retractable roof system for a tennis stadium. |

**USTA Retractable Roof Project—Arthur Ashe Stadium**



*See, e.g.*, HH00000463.

**USTA Retractable Roof Project—Arthur Ashe Stadium**

HH00000125

**at least one major truss spanning a distance between a first support location and a second support location that is at least 200 feet, said major truss being structurally configured as a tied arch having a curved convex upper portion and a tensioned lower portion that extends directly beneath said curved convex upper portion and is shaped, sized and positioned to assume most gravity induced stress within the major truss as tension;**

The drawing included below illustrates that the retractable roof being constructed at Arthur Ashe Stadium includes at least one major truss spanning a distance of approximately 461 feet between a first support location and a second support location.



HH00000111

As shown in the drawing included below, the truss is structurally configured as a tied arch and includes a curved convex upper portion and a tensioned lower portion that extends directly beneath the curved convex upper portion.

**USTA Retractable Roof Project—Arthur Ashe Stadium**



HH00000466.

**at least one roof member that is secured to said major truss;**

The drawings include below illustrate that at least one roof panel is secured to and moveable along the truss.  For example, the dashed-line shown in the drawings illustrates the "approx[imate] limits of [the] retractable roof panel" in both the closed and open positions.



HH00000466.



**USTA Retractable Roof Project—Arthur Ashe Stadium**

HH00000466.



HH00000469.

**a curved, convex guide track that is secured to said curved, convex upper portion of said major truss, and wherein said roof member is constructed and arranged to be moved over said guide track; and**

The diagram below shows a guide track (rail) that is secured to the curved, convex upper portion of the major truss:

**USTA Retractable Roof Project—Arthur Ashe Stadium**



Included below is a close-up view of a portion of the drawing included above showing the retractable roof in the open position.  This drawing illustrates that a curved, convex guide track (e.g., a rail) is attached to the curved, convex upper portion of the truss.

- 17 -

**USTA Retractable Roof Project—Arthur Ashe Stadium**



HH00000467.

The roof panels are attached to "retractable roof bogie[s]" that travel along the rail. As illustrated by a comparison of the roof elevation drawings in the closed and open positions, the bogies travel along the rail as the roof panels are moved between the closed and open positions.



**USTA Retractable Roof Project—Arthur Ashe Stadium**

HH00000466.



HH00000467.

**a retention mechanism for preventing said roof member from being lifted upwardly with respect to said guide track wherein said retention mechanism comprises at least one retention element for engaging a downwardly facing surface of said guide track in the event of initiation of upward vertical movement of said roof member relative to said guide track.**

The drawing included below provides a close-up view of the bogies used in the retractable roof system.  As shown in the drawing, the bogie assembly includes an "uplift guard" that engages with a downwardly facing surface of the rail to prevent upward vertical movement of the roof panels.



HH00000478.

**USTA Retractable Roof Project—Arthur Ashe Stadium**



HH00000485

45. In addition, based on Uni-Systems' investigation to date, the Ashe Retractable Roof design also infringes at least Claims 2-4 of the Retention Mechanism patent. Patent Infringement Claim Charts for Arthur Ashe Stadium are attached to the Third Amended Complaint as Exhibit C.

46. As a second example, based on Uni-Systems' current investigation, the Ashe Retractable Roof design also infringes at least Claim 1 of the Lateral Release patent:

| USTA Retractable Roof Project—Arthur Ashe Stadium |
|---|

**1. The system for supporting a large overhead structural member for stable movement with respect to an underlying structure, comprising:**

The drawings for the USTA Retractable Roof Project at Arthur Ashe Stadium illustrate a retractable roof system for a tennis stadium.



*See, e.g.*, HH00000463.

The drawings included below illustrate that the retractable roof panels move between a closed position and an open position. For example, the dashed-line shown in the drawings illustrates the "approx[imate] limits of [the] retractable roof panel" in both the closed and open positions.

## USTA Retractable Roof Project—Arthur Ashe Stadium



HH00000466.

HH00000467.

**USTA Retractable Roof Project—Arthur Ashe Stadium**



HH00000469.

**first and second transport mechanisms, each of which is constructed and arranged to permit the large overhead structural member to move in a predetermined path with respect to the underlying structure, said transport mechanism comprising a single trolley rail on the under lying structure with no additional rail and a plurality of rail follower wheels on the large overhead structural member that are adapted to ride on said single trolley rail; and**

Included below is a close-up view of a portion of the retractable roof system, which shows the retractable roof in the closed position. This drawing illustrates first and second transport mechanisms in the form of bogies that travel in a predetermined path along a single rail that is attached to the underlying roof truss.

## USTA Retractable Roof Project—Arthur Ashe Stadium



HH00000468.



HH00000486

As shown in the drawings included below, each of the bogies that travels along the rail includes a plurality of follower wheels that ride on the rail.

## USTA Retractable Roof Project—Arthur Ashe Stadium



HH00000468.

HH00000478.

a lateral release system for each of said transport mechanism, interposed between said rail follower wheels and the large overhead structural member, for maintaining the transport mechanism in a predetermined orientation while simultaneously permitting a limited amount of movement of the large overhead structural member in a direction that is nonparallel to said predetermined path, wherein said system transmits a very small side

### USTA Retractable Roof Project—Arthur Ashe Stadium

**load to said single trolley rail with no need for additional lateral reinforcement, said lateral release system comprising a linear slide bearing**

The drawings included below illustrate that the bogies include a lateral release system interposed between the rail follower wheels and large overhead structural member.



HH00000478.

The lateral release permits a limited amount of movement of the large overhead structural member in a direction transverse to the predetermined path. By allowing a limited amount of transverse movement, the bogie transmits a very small side load to the single trolley rail:

"The floating bogie has the ability to slide transversely +/- 8", this partially removes the the [sic] load from acting on the floating [bogie]." HH00036214.

The drawing included below is a section view of the equalizer assembly of the bogie assembly used in the retractable roof system. The drawing and the associated bill of materials (BOM) illustrates that the equalizer assembly includes a linear slide bearing in the form of a bushing (5) and a pin (3). The pin (3) is inserted through the bushing (5) such that the bushing (5) can slide along the surface the pin (3) along axis A (shown in red), which is substantially perpendicular to the rail. The movement of the bushing (5) relative to the pin (3) enables lateral movement of the retractable roof panels (e.g., movement in a direction that is not parallel to the rail).

## USTA Retractable Roof Project—Arthur Ashe Stadium



**SECTION A-A**
SCALE: 1 1/2" = 1'-0"

HUNT-0114625

| ITEM | QTY | DESCRIPTION | STOCK NUMBER | SHEET/KEY | WT EA |
|------|-----|-------------|--------------|-----------|-------|
| | | BOM | | | |
| 1 | 6 | FLOATING YOKE ASSEMBLY | 14P11704 | MK302 01-01 | |
| 2 | 1 | FLOATING YOKE FABRICATION | | MK305 01-01 | 4267 |
| 3 | 1 | EQUALIZER PIN - FLOAT | | MK309 01-03 | 2275 |
| 4 | 2 | KEEPER PLATE | | MK309 01-05 | 181 |
| 5 | 2 | BUSHING | | MK309 01-02 | 111 |
| 6 | 2 | BELLOWS, 21" ID x 25" OD x 27 1/2" EXTENDED LENGTH | BS-535-0700-050S2EE | | 8 |
| 7 | 32 | HEX HEAD CAP SCREW, 1-8UNC x 4", GR-5 | HHCS 016-008x016 GR5 | | 1 |
| 8 | 32 | LOCK WASHER 1" HELICAL SPRING | LW  016 HS | | 0 |

HUNT-0114625

**USTA Retractable Roof Project—Arthur Ashe Stadium**



HH00036212.

47.     In addition, based on Uni-Systems' investigation to date, the Ashe Retractable Roof design infringes at least Claims 2, 9, 14, 15, 19, and 21 of the Lateral Release patent.  Patent Infringement Claim Charts for Arthur Ashe Stadium are attached to the Third Amended Complaint as Exhibit D.

### D.     The Louis Armstrong Stadium Retractable Roof

#### 1.     Rossetti's Involvement in the Construction of the Louis Armstrong Stadium Retractable Roof

48.     After construction of the Ashe Retractable Roof was completed, additional construction at the National Tennis Center took place, which included the

building of the new Louis Armstrong Stadium, which—like Arthur Ashe Stadium—includes a retractable roof (the "Armstrong Retractable Roof").

49.     USTA and USTA NTC hired Hunt to serve as the construction manager for the Louis Armstrong Stadium.  In that role, Hunt had overall responsibility for the construction of the Louis Armstrong Stadium, including construction of the Armstrong Retractable Roof.

50.     Matthew Rossetti P.C. served as the architect for the Louis Armstrong Stadium and was involved in the design of the Armstrong Retractable Roof.  On information and belief, Rossetti Inc. was working with Matthew Rossetti P.C. in connection with the design of the Armstrong Retractable Roof.

51.     Rossetti was responsible for drafting all schematic design, design development, and construction documents for the Armstrong Retractable Roof.

52.     Rossetti was responsible for indemnifying USTA with respect to claims against the Armstrong Retractable Roof.

53.     The work performed by Rossetti as architect of record was instrumental to the design and construction of the Armstrong Retractable Roof.

### 2.     Uni-Systems' Discovery of the Armstrong Retractable Roof's Infringement

54.     In 2014, Rossetti, USTA, and USTA NTC began planning and designing a new Louis Armstrong Stadium that would include a retractable roof. Rossetti planned for the Armstrong Retractable Roof to have a similar bi-parting

roof system as the Ashe Retractable Roof.  In the Louis Armstrong Stadium Replacement Criteria, Rossetti stated that the proposed roof mechanization system is based on the retractable roof design that was being built for Arthur Ashe Stadium.

55.    On or about June 2016, Hunt, USTA, and USTA NTC issued a request for proposal relating to the planned Armstrong Retractable Roof, which included drawings for the retractable roof.

56.    Uni-Systems received copies of the drawings and recognized that the proposed lateral release mechanism for the Armstrong Retractable Roof was essentially the same design as the infringing mechanism for the Ashe Retractable Roof.  Uni-Systems promptly notified Hunt and USTA of its belief that the proposed design for the new Armstrong Retractable Roof was the same as the design for the Ashe Retractable Roof, and that it too would infringe the Lateral Release patent if constructed.

57.    In response to Uni-Systems' infringement notification, Rossetti's Dave Richards instructed the Engineer of Record, Geiger Gossen Campbell Engineers, P.C. ("Geiger"), to revise the Armstrong Retractable Roof drawings immediately to delete any and all infringing elements of the current retractable roof design.  Geiger's Karen Lynch confirmed her understanding of Rossetti's instruction that Geiger was to hide or mask the infringing elements in the drawings.

58.     Shortly after Uni-Systems notified Hunt and USTA of its belief that the proposed design for the Armstrong Retractable Roof infringes the Lateral Release patent, Uni-Systems received copies of later-dated drawings for the roof's lateral release mechanism, including drawings dated August 2016.

59.     The August 2016 drawings reveal clear attempts to design around the Lateral Release patent.  These attempts, however, failed to avoid infringement, and thus the Armstrong Retractable Roof infringes various claims of the Lateral Release patent.

60.     Uni-Systems prepared preliminary Infringement Claim Charts that track the language of certain claims of the Lateral Release patent to the Armstrong Retractable Roof design documents.  Uni-Systems readily provided the charts to Rossetti on July 6, 2017.  Despite Uni-Systems' request that Rossetti provide a response to the charts, Rossetti has failed to do so.

61.     In August 2018, Geiger and Rossetti proposed another alleged design-around by adding thrust spacers to the bogies of the Armstrong Retractable Roof in second effort to design-around Uni-Systems' Lateral Release patent and in response to Uni-Systems' charts explaining why the first design-around effort failed.  However, the supplier of the bogies stated that the addition of the thrust spacers would void the bogies' warranty.  Therefore, the thrust spacers were never added to

the Armstrong Retractable Roof, and the Armstrong Retractable Roof continued to infringe the Lateral Release patent.

> **2.     The Armstrong Retractable Roof Design Infringes the Lateral Release Patent**

62.     Uni-Systems' preliminary Infringement Claim Charts, which were provided to Rossetti in Uni-Systems' July 6, 2017 letter, demonstrate that the design for the Armstrong Retractable Roof infringes various claims of the Lateral Release patent.  On information and belief, Rossetti built the Armstrong Retractable Roof based on a design that infringes the Lateral Release patent, as shown below.

63.     For example, the Armstrong Retractable Roof infringes on at least Claim 1 of the Lateral Release patent:

| USTA Retractable Roof Project—Armstrong Stadium |
| --- |
| **1. The system for supporting a large overhead structural member for stable movement with respect to an underlying structure, comprising:** |
| The drawings and simulations for the USTA Armstrong Stadium illustrate that the project involves the construction of a retractable roof system.  The drawings and simulations included below illustrate that the retractable roof panels move between a closed position (shown in the top two figures) and an open position (shown in the bottom two figures). |

## USTA Retractable Roof Project—Armstrong Stadium



(http://www.stonebridgesteelerection.com/usta-louis-armstrong-stadium/2017/1/5/fbystfczrj7vilhrjfxk127r7o0lw6)



(S-801: Roof System Isometrics)

## USTA Retractable Roof Project—Armstrong Stadium



(http://www.stonebridgesteelerection.com/usta-louis-armstrong-stadium/2017/1/5/fbystfczrj7vilhrjfxk127r7o0lw6)



(S-801: Roof System Isometrics)

**first and second transport mechanisms, each of which is constructed and arranged to permit the large overhead structural member to move in a predetermined path with respect to the underlying structure, said transport mechanism comprising a single trolley rail on the under lying structure with**

**USTA Retractable Roof Project—Armstrong Stadium**

**no additional rail and a plurality of rail follower wheels on the large overhead structural member that are adapted to ride on said single trolley rail; and**

Included below is a side and top view of a portion of the retractable roof system. The drawing included below illustrates first and second transport mechanisms in the form of carriages that travel in a predetermined path along a single rail that is attached to the underlying roof truss.  As shown in the drawing below, each of the carriages that travels along the rail includes a plurality of follower wheels that ride on the rail.



(S-802: Roof Panels Plan).



(S-804: Mechanization Fixed Systems Plan & Elevations)

| USTA Retractable Roof Project—Armstrong Stadium |
|---|
| The close-up view of a carriage assembly included below further illustrates that each carriage assembly includes multiple follower wheels adapted to ride on a single rail.<br><br><br><br>(S-820: Carriage Trucks North Guided). |
| **a lateral release system for each of said transport mechanism, interposed between said rail follower wheels and the large overhead structural member, for maintaining the transport mechanism in a predetermined orientation while simultaneously permitting a limited amount of movement of the large overhead structural member in a direction that is nonparallel to said predetermined path, wherein said system transmits a very small side load to said single trolley rail with no need for additional lateral reinforcement, said lateral release system comprising a linear slide bearing.**<br><br>The drawings included below illustrate that the retractable roof system includes a lateral release system. For example, the drawings included below are a section view of the carriage assembly. |

## USTA Retractable Roof Project—Armstrong Stadium



(S-820: Carriage Trucks North Guided).

(S-820: Carriage Trucks North Guided).

## USTA Retractable Roof Project—Armstrong Stadium



(S-821: Carriage Truck South Released).



64.    In addition, based on Uni-Systems' investigation to date, the Armstrong

Retractable Roof design also infringes at least Claims 2 and 21 of the Lateral Release

patent.   Patent Infringement Claim Charts for the Louis Armstrong Stadium are

attached to the Third Amended Complaint as Exhibit E.

## COUNT I:  INFRINGEMENT OF THE RETENTION MECHANISM
## PATENT AT ARTHUR ASHE STADIUM (U.S. PATENT NO. 6,789,360)

65.     Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-64 of the Third Amended Complaint as if fully set forth herein.

66.     On September 14, 2004, the Retention Mechanism patent (U.S. Patent No. 6,789,360), entitled "*Retractable Roof System for Stadium*," was duly and legally issued by the United States Patent and Trademark Office.

67.     Uni-Systems is the owner, by assignment, of all rights, title, and interest in the Retention Mechanism patent.

68.     Rossetti has had knowledge and notice of the Retention Mechanism patent, as well as its infringement thereof, at least as early as on or about May 24, 2016.

69.     Rossetti has directly and indirectly infringed the Retention Mechanism patent by making, using, importing, offering for sale, and/or selling and inducing others to make and use the Ashe Retractable Roof design, which practices one or more claims of the Retention Mechanism patent.   Rossetti is liable for its infringement of the Retention Mechanism patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

70.    As lead designer and architect of the Ashe Retractable Roof, Rossetti has infringed and continues to infringe the Retention Mechanism patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016. Rossetti is also vicariously liable for infringement of the Retention Mechanism patent under 35 U.S.C. § 271(a) by controlling or directing one or more third parties to make or use the Ashe Retractable Roof.

71.    Rossetti attached its Submittal Data Sheet / Transmittal to third parties' blueprints and plans for the Ashe Retractable Roof.  Each Submittal Data Sheet / Transmittal contains the following outcomes from Rossetti's review: "Approved, Approved as Noted Resubmission not Required, Approved as Noted Resubmission Required, Not Approved, and Not Reviewed." When Rossetti reviewed and approved a blueprint or plan, the third party could proceed with making or using the Ashe Retractable Roof.  On the other hand, if Rossetti reviewed and did not approve a blueprint or plan, the third party could not proceed with making or using the Ashe Retractable Roof.  By reviewing and approving or reviewing and not approving third parties' blueprints and plans, Rossetti was directing and controlling the third parties' making and using of the Ashe Retractable Roof.

72.    As lead designer and architect of the Ashe Retractable Roof, Rossetti has induced infringement and continues to induce infringement of the Retention

Mechanism patent under 35 U.S.C. § 271(b).   Rossetti knew that the Ashe Retractable Roof it designed infringed the Retention Mechanism patent, and Rossetti specifically intended to encourage third parties' infringement through their making and using the Ashe Retractable Roof.

73.     Rossetti designed the Ashe Retractable Roof and developed the mechanization design used by others to develop the construction documents and build the Ashe Retractable Roof.   Early on in the process of designing the Ashe Retractable Roof, Hunt told Rossetti that that Uni-Systems may have a patent on the design approach used by Rossetti for the Ashe Retractable Roof.   After having been told such information, Rossetti proceeded without further investigation to finalize the design for the Ashe Retractable Roof.   Rossetti's design was intended to be used by third parties to develop construction documents and build the Ashe Retractable Roof, which infringes the Retention Mechanism patent.

74.     With knowledge of the Retention Mechanism patent, Rossetti reviewed and approved test plans for the Ashe Retractable Roof.   The test plans include opening and closing the completed Ashe Retractable Roof, which infringes one or more claims of the Retention Mechanism patent.   Rossetti knew that its approval of the test plans would cause a third party to use the infringing Ashe Retractable Roof as directed in the test plans.   In approving the test plans, Rossetti intended for a third

party to engage in a use of the Ashe Retractable Roof that it knew infringes the Retention Mechanism patent.

75.     By reviewing and approving test plans for the Ashe Retractable Roof, Rossetti directed and controlled a third party's infringing use of the Ashe Retractable Roof.  As such, Rossetti is vicariously liable for the third party's infringing use of the Ashe Retractable Roof.

76.     Rossetti later admitted that the Ashe Retractable Roof design infringed Uni-Systems' patents.

77.     As a result of Rossetti's infringement of the Retention Mechanism patent, Uni-Systems has suffered and will continue to suffer damages.  Under 35 U.S.C. § 284, Uni-Systems is entitled to recover from Rossetti the damages adequate to compensate for such infringement in an amount to be determined at trial.

78.     Rossetti's acts of infringement of the Retention Mechanism patent herein have been committed and are being committed with full knowledge of or willful blindness to Uni-Systems' rights in the patent.  On information and belief, Rossetti has acted and is continuing to act despite knowing that its actions constituted direct and/or indirect infringement of a valid patent since at least May 24, 2016, when Uni-Systems sent a letter to USTA, Hardesty & Hanover LLC and Hardesty & Hanover LLP (collectively, "Hardesty & Hanover"), and Rossetti notifying them of the infringement.  Despite the notice of infringement of the

Retention Mechanism patent, Rossetti implemented the infringing design of the Ashe Retractable Roof.  Thereafter, USTA and USTA NTC proceeded to enjoy the use of the retractable roof at the 2016 U.S. Open and subsequent U.S. Opens. Moreover, on or about June 3, 2016, Hunt sent out bid notifications for another retractable roof to be built over the Louis Armstrong Stadium.  The notification included project drawings for a retractable roof that, if built, would also infringe Uni-Systems' patented intellectual property.  Rossetti ignored Uni-Systems' request, made on June 10, 2016, to suspend the bid process and discuss Uni-Systems' claims. Rossetti's acts, since at least May 24, 2016, if not before, constitute willful and deliberate infringement, entitling Uni-Systems to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

79.     Rossetti's acts of infringement have caused and will continue to cause irreparable harm to Uni-Systems, for which there is no adequate remedy at law, entitling Uni-Systems to injunctive relief.

## COUNT II:  INFRINGEMENT OF THE LATERAL RELEASE PATENT AT ARTHUR ASHE STADIUM (U.S. PATENT NO. 7,594,360)

80.     Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-79 of the Third Amended Complaint as if fully set forth herein.

81.     On September 29, 2009, the Lateral Release patent (U.S. Patent No. 7,594,360), entitled "*Lateral Release Mechanism for Movable Roof Panels*," was duly and legally issued by the United States Patent and Trademark Office.

82.     Uni-Systems is the owner, by assignment, of all rights, title and interest in the Lateral Release patent.

83.     Rossetti has had knowledge and notice of the Lateral Release patent, as well as its infringement thereof, at least as early as August 26, 2013.

84.     Rossetti has directly and indirectly infringed and continue to infringe the Lateral Release patent by making, using, importing, offering for sale, and/or selling and inducing others to make and use the Ashe Retractable Roof design, which practices one or more claims of the Lateral Release patent.  Rossetti is liable for its infringement of the Lateral Release patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

85.     As lead designer and architect of the Ashe Retractable Roof, Rossetti has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, making and using the Ashe Retractable Roof, which was completed, operational, and put into service as of August 2016.  Rossetti is also vicariously liable for infringement of the Lateral Release patent under 35 U.S.C. § 271(a) by controlling or directing one or more third parties to make or use the Ashe Retractable Roof.

86.     Rossetti attached its Submittal Data Sheet / Transmittal to third parties' blueprints and plans for the Ashe Retractable Roof.  Each Submittal Data Sheet / Transmittal contains the following outcomes from Rossetti's review: "Approved, Approved as Noted Resubmission not Required, Approved as Noted Resubmission Required, Not Approved, and Not Reviewed." When Rossetti reviewed and approved a blueprint or plan, the third party could proceed with making or using the Ashe Retractable Roof.  On the other hand, if Rossetti reviewed and did not approve a blueprint or plan, the third party could not proceed with making or using the Ashe Retractable Roof.  By reviewing and approving or reviewing and not approving third parties' blueprints and plans, Rossetti was directing and controlling the third parties' making and using of the Ashe Retractable Roof.

87.     As lead designer and architect of the Ashe Retractable Roof, Rossetti has induced infringement and continues to induce infringement of the Lateral Release patent under 35 U.S.C. § 271(b).  Rossetti knew that the Ashe Retractable Roof it designed infringed the Lateral Release patent, and Rossetti specifically intended to encourage others' infringement through their making and using the Ashe Retractable Roof.

88.     Rossetti designed the Ashe Retractable Roof and developed the mechanization design used by others to develop the construction documents and build the Ashe Retractable Roof.  Early on in the process of designing the Ashe

Retractable Roof, Hunt told Rossetti that Uni-Systems may have a patent on the design approach used by Rossetti for the Ashe Retractable Roof.  In addition, in 2016 before Ashe was operational, and after Uni-Systems had notified it of several Uni-Systems patents, Rossetti guessed that the Ashe Retractable Roof infringed the "release mechanism" patent of Uni-Systems even before Uni-Systems asserted that patent in this case.  At this same time that it received notice that Ashe infringed, Rossetti re-designed Armstrong to attempt to avoid infringement there, which design was similar in design to Ashe. Rossetti knew of the relevant similarities in design between Ashe and Armstrong, but chose to not redesign Ashe Retractable Roof even though it knew Ashe as designed also infringed the Lateral Release Patent.  With knowledge of infringement of the Lateral Release Patent, Rossetti maintained the design and facilitated the final construction, testing, and commissioning of the Ashe Retractable Roof.  Rossetti's design was intended to be used by third parties to develop construction documents and build the Ashe Retractable Roof, which infringes the Lateral Release patent.

89.    With knowledge of the Lateral Release patent, Rossetti drafted blueprints for the Ashe Retractable Roof depicting a walkway for permitting maintenance access to the lateral release system.  The walkway depicted in the blueprints, when installed in the Ashe Retractable Roof, infringes one or more claims of the Lateral Release patent.  Rossetti knew that drafting the blueprints would cause

a third party to make, install, and use the depicted walkway. In drafting the blueprints, Rossetti intended for a third party to engage in the manufacture, installation, and use of the depicted walkway in a manner that it knew infringes the Lateral Release patent.

90. With knowledge of the Lateral Release patent, Rossetti reviewed and approved blueprints for the Ashe Retractable Roof depicting a transport mechanism comprising a linear slide bearing. The transport mechanism depicted in the blueprints, when installed in the Ashe Retractable Roof, infringes one or more claims of the Lateral Release patent. Rossetti knew that approving the blueprints would cause a third party to make, install, and use the depicted transport mechanism. In approving the blueprints, Rossetti intended for a third party to engage in the manufacture, installation, and use of the depicted transport mechanism that it knew infringes the Lateral Release patent.

91. By reviewing and approving blueprints for Ashe Retractable Roof depicting a transport mechanism comprising a linear slide bearing, Rossetti directed and controlled a third party's infringing building of the Ashe Retractable Roof. As such, Rossetti is vicariously liable for the third party's infringing making and use of the Ashe Retractable Roof.

92. With knowledge of the Lateral Release patent, Rossetti reviewed and approved test plans for the Ashe Retractable Roof. The test plans include opening

and closing the completed Ashe Retractable Roof, which infringes one or more claims of the Lateral Release patent. Rossetti knew that its approval of the test plans would cause a third party to use the infringing Ashe Retractable Roof as directed in the test plans. In approving the test plans, Rossetti intended for a third party to engage in a use of the Ashe Retractable Roof that it knew infringes the Lateral Release patent.

93. By reviewing and approving test plans for the Ashe Retractable Roof, Rossetti directed and controlled a third party's infringing use of the Ashe Retractable Roof. As such, Rossetti is vicariously liable for the third party's infringing use of the Ashe Retractable Roof.

94. Rossetti later admitted that the Ashe Retractable Roof design infringed Uni-Systems' patents.

95. As a result of Rossetti's infringement of the Lateral Release patent, Uni-Systems has suffered and will continue to suffer damages. Under 35 U.S.C. § 284, Uni-Systems is entitled to recover from Rossetti the damages adequate to compensate for such infringement in an amount to be determined at trial.

96. Rossetti's acts of infringement of the Lateral Release patent herein have been committed and are being committed with full knowledge of or willful blindness to Uni-Systems' rights in the patent. Rossetti knew there was a high probability that the Ashe Retractable roof design infringed the Lateral Release patent since at least

August 2013, and since that time has acted despite knowing or being willfully blind to the fact that its actions constituted or would cause direct and/or indirect infringement of a valid patent.  Despite the notices of infringement of the Lateral Release Mechanism patent, Rossetti implemented the infringing design of the Ashe Retractable Roof.  Thereafter, USTA and USTA NTC proceeded to enjoy the use of the retractable roof at the 2016 U.S. Open and subsequent U.S. Opens.  Moreover, Hunt, on or about June 3, 2016, sent out bid notifications for another retractable roof to be built over the Louis Armstrong Stadium.  The notification included project drawings for a retractable roof that, if built, would also infringe Uni-Systems' patented intellectual property.  Rossetti ignored Uni-Systems' request, made on June 10, 2016, to suspend the bid process and discuss Uni-Systems' claims.  Rossetti's acts since at least May 24, 2016, if not before, constitute willful and deliberate infringement, entitling Uni-Systems to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

97.    Rossetti's acts of infringement have caused and will continue to cause irreparable harm to Uni-Systems, for which there is no adequate remedy at law, entitling Uni-Systems to injunctive relief.

**COUNT III:  INFRINGEMENT OF THE LATERAL RELEASE PATENT AT LOUIS ARMSTRONG STADIUM (U.S. PATENT NO. 7,594,360)**

98.     Uni-Systems re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-97 of the Third Amended Complaint as if fully set forth herein.

99.     Rossetti has directly and indirectly infringed the Lateral Release patent by making, using, importing, offering for sale, and/or selling and inducing others to make and use the Armstrong Retractable Roof design, which practices one or more claims of the Lateral Release patent.  Rossetti is liable for its infringement of the Lateral Release patent pursuant to 35 U.S.C. §§ 271(a), (b), and/or (c).

100.    As lead designer and architect of the Armstrong Retractable Roof, Rossetti has infringed and continues to infringe the Lateral Release patent under 35 U.S.C. § 271(a) by, among other things, making and using the Armstrong Retractable Roof, which was completed, operational, and put into service in time for the U.S. Open in 2018.  Rossetti is also vicariously liable for infringement of the Lateral Release patent under 35 U.S.C. § 271(a) by controlling or directing one or more third parties to make or use the Armstrong Retractable Roof.

101.    Rossetti attached its Submittal Data Sheet / Transmittal to third parties' blueprints and plans for the Armstrong Retractable Roof.  Each Submittal Data Sheet / Transmittal contains the following outcomes from Rossetti's review: "Approved, Approved as Noted Resubmission not Required, Approved as Noted Resubmission Required, Not Approved, and Not Reviewed." When Rossetti reviewed and

approved a blueprint or plan, the third party could proceed with making or using the Armstrong Retractable Roof. On the other hand, if Rossetti reviewed and did not approve a blueprint or plan, the third party could not proceed with making or using the Armstrong Retractable Roof. By reviewing and approving or reviewing and not approving third parties' blueprints and plans, Rossetti was directing and controlling the third parties' making and using of the Armstrong Retractable Roof.

102. As lead designer and architect of the Armstrong Retractable Roof, Rossetti has induced infringement and continues to induce infringement of the Lateral Release patent under 35 U.S.C. § 271(b). Rossetti knew that the Armstrong Retractable Roof it designed infringed the Lateral Release patent, and Rossetti specifically intended to encourage others' infringement through their making and using the Armstrong Retractable Roof, which was completed, operational, and put into service in time for the U.S. Open in 2018.

103. With knowledge of the Lateral Release patent, Rossetti prepared, reviewed, and approved schematic designs, design development, and construction documents used by third parties to build the Armstrong Retractable Roof. For example, among other things, Rossetti drafted blueprints for the Armstrong Retractable Roof and approved drawings and procedures for assembling the Armstrong Retractable Roof. Rossetti knew that its drafting of blueprints and approval of drawings and assembly procedures would cause a third party to build

the infringing Armstrong Retractable Roof as directed in the blueprints, drawings, and assembly procedures.  In drafting the blueprints and approving the drawings and assembly procedures, Rossetti intended for a third party to engage in a making and use of the Armstrong Retractable Roof that it knew infringes the Lateral Release patent.

104.   By reviewing and approving drawings and assembly procedures for the Armstrong Retractable Roof, Rossetti directed and controlled a third party's infringing building of the Ashe Retractable Roof.  As such, Rossetti is vicariously liable for the third party's infringing making and use of the Ashe Retractable Roof.

105.   Rossetti had knowledge and notice of the Lateral Release patent, as well as its infringement thereof, no later than August 26, 2013.   Knowing such information, Rossetti nevertheless proposed a design for the Armstrong Retractable Roof that was similar to the design of the Ashe Retractable Roof.

106.   In May 2016, Uni-Systems put Rossetti on notice that the Ashe Retractable Roof, which was nearly complete, infringed Uni-Systems' patents, and that the design for the Armstrong Retractable Roof, which had not yet been built, infringed one of its patents as well.   Unlike the Ashe Retractable Roof project, Rossetti was responsible for indemnifying USTA NTC and other third parties against any claims arising out of or related to the Armstrong Retractable Roof project.

107.   Before Uni-Systems had identified the specific patents at issue in the roofs, Rossetti correctly "guessed" that Uni-Systems would claim that the release mechanism in the Ashe Retractable Roof was involved in Uni-Systems' infringement claim.  Rossetti later admitted that the Ashe Retractable Roof design infringed Uni-Systems' patents.  Rossetti's design of the Armstrong Retractable Roof was similar enough to the design of Ashe that Rossetti attempted to re-design the Armstrong Retractable Roof beginning in Summer 2016 to, hopefully, avoid a claim that the redesigned roof infringed Uni-Systems' patent.

108.   While attempting to re-design the Armstrong Retractable Roof and after receiving notice that the original design infringed one of Uni-Systems' patents, Rossetti instructed Geiger to remove elements from the design drawings to mask or hide from drawings elements that may infringe Uni-Systems' intellectual property.  On information and belief, Rossetti issued that instruction in order to conceal elements of the design shown in its design documents that could be necessary to establish infringement of Uni-Systems' Lateral Release patent.

109.   Additionally, in August 2018, after the Armstrong Retractable Roof had been erected but before it was fully operational, Rossetti and Geiger attempted to change the design of the roof to install thrust spacers and remove gaps in the structure.  On information and belief, Rossetti recommended installing the spacers to make the roof look less like a roof that would infringe the Lateral Release patent

in an attempt to negate a claim by Uni-Systems that the roof infringed the Lateral Release patent.  Rossetti's recommendation confirms its recognition early in the case that it interpreted the Lateral Release Patent in the same way Uni-Systems has interpreted it in this litigation, and that the Armstrong Retractable Roof would infringe the Lateral Release Patent unless Rossetti changed the design by adding thrust spacers.

110.   Rossetti failed to re-design the roof in a way that did not infringe the Lateral Release Mechanism.  As built according to Rossetti's design, the Armstrong Retractable Roof infringes the Lateral Release patent.  The design for the infringing roof was approved by Rossetti with knowledge of the Lateral Release patent. Rossetti specifically intended for the roof design for the Armstrong Retractable Roof be used by third parties to draft construction documents for the Armstrong Retractable Roof, build the Armstrong Retractable Roof, and test and operate the Armstrong Retractable Roof.

111.   Rossetti has had specific notice of the Armstrong Retractable Roof's infringement of the Lateral Release patent since as early August 2013 and no later than the summer of 2016.  In addition, Uni-Systems provided notice to Rossetti of the particular claims of the Lateral Release patent that Uni-Systems believes the Armstrong Retractable Roof infringes via a letter dated July 6, 2017, more than a year before Armstrong Stadium reopened with its infringing retractable roof.

112. As a result of Rossetti's infringement of the Lateral Release patent, Uni-Systems has suffered and will continue to suffer damages. Under 35 U.S.C. § 284, Uni-Systems is entitled to recover from Rossetti the damages adequate to compensate for such infringement in an amount to be determined at trial.

113. Rossetti's acts of infringement of the Lateral Release patent herein have been committed and are being committed with full knowledge of Uni-Systems' rights in the patent. On information and belief, Rossetti has acted and are continuing to act despite knowing that its actions constituted direct and/or indirect infringement of a valid patent since at least May 24, 2016, if not before, when Uni-Systems sent a letter to USTA and Rossetti notifying them of the Ashe Retractable Roof's infringement of the Lateral Release patent. Once Uni-Systems received copies of design drawings for the Armstrong Retractable Roof in July or August 2016, Uni-Systems promptly notified Rossetti that the roof design, if constructed, would also infringe on the Lateral Release Patent. Uni-Systems also provided Rossetti with written notice of the specific claims of the Lateral Release patent that Uni-Systems believes the Armstrong Retractable Roof infringes via a letter enclosing preliminary infringement charts, dated July 6, 2017. Despite these various notifications of the Armstrong Retractable Roof's infringement, Rossetti oversaw the construction of the Armstrong Retractable Roof according to the infringing design and constructed the infringing design in an effort to complete the Armstrong Retractable Roof in time

for the 2018 U.S. Open. Rossetti's acts, since August 2013, constitute willful and deliberate infringement, entitling Uni-Systems to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

114. Rossetti's acts of infringement have caused and will continue to cause irreparable harm to Uni-Systems, for which there is no adequate remedy at law, entitling Uni-Systems to injunctive relief.

## PRAYER FOR RELIEF

115. Uni-Systems prays for the following relief:

a. A judgment holding that Rossetti has infringed the Retention Mechanism and Lateral Release patents.

b. That Rossetti and its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in concert with Rossetti be permanently enjoined from infringement, inducement of infringement, and contributory infringement of each of the Patents-in-Suit;

c. That Uni-Systems be awarded damages for Rossetti's infringement of the Patents-in-Suit, together with interest (both pre- and post-judgment interest), costs, and disbursements as determined by this Court under 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

d.      That this action be adjudged an exceptional case and Uni-Systems be awarded its attorneys' fees in this action pursuant to 35 U.S.C. § 285;

e.      That Uni-Systems is entitled to reasonable costs, including attorneys' fees and expenses; and

f.      That Uni-Systems be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated:  June 19, 2020

/s/Jaye Quadrozzi

**YOUNG & ASSOCIATES, PC**

Jaye Quadrozzi (P71646)
Orchards Corporate Center
27725 Stansbury Blvd., Ste. 125
Farmington Hills, Michigan 48334
Tel: (248) 353-8620
quadrozzi@youngpc.com
efiling@youngpc.com

*Attorneys for Plaintiff Uni-Systems, LLC*

**NORTON ROSE FULBRIGHT US LLP**

David Ben-Meir (CA SBN 192028)
555 South Flower Street, Forty-First Floor
Los Angeles, California 90071
Tel: (213) 892-9200
Fax: (213) 892-9494
david.ben-meir@nortonrosefulbright.com

Victoria V. Corder (NY SBN 4881686)
1301 Avenue of the Americas
New York, New York 10019-6022
Tel: (212) 318-3000
Fax: (212) 318-3400
victoria.corder@nortonrosefulbright.com

Brandy S. Nolan (TX SBN 24070337)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Tel: (214) 855-8000

Fax: (214) 855-8200
brandy.nolan@nortonrosefulbright.com

Sean Patrick McGinley (TX SBN 24116740)
Texas State Bar No. 24116740
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Tel:  (512) 474-5201
Fax: (512) 536-4598
sean.patrick.mcginley@nortonrosefulbright.com

*Attorneys for Plaintiff Uni-Systems, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below the foregoing document, including the attached exhibits, was filed using the CM/ECF System, which caused counsel of record for the parties to be served by electronic mail, as more fully reflected on the notice of electronic filing.

Dated: June 19, 2020                         */s/Jaye Quadrozzi*

**YOUNG & ASSOCIATES, PC**

Jaye Quadrozzi (P71646)
Orchards Corporate Center
27725 Stansbury Blvd., Ste. 125
Farmington Hills, Michigan 48334
Tel: (248) 353-8620
quadrozzi@youngpc.com
efiling@youngpc.com