## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNI-SYSTEMS, LLC,**

          Plaintiff,

v.

**ROSSETTI INC., et al.**

          Defendants.

_____/

**No. 2:20-CV-10953-BAF-APP**

Hon.    Bernard    A.    Friedman

Magistrate Judge Anthony P. Patti

### ROSSETTI'S MOTION TO DISMISS
### UNI-SYSTEMS'S THIRD AMENDED COMPLAINT

Defendants Rossetti, Inc. and Matthew L. Rossetti Architect, P.C. (collectively, "Rossetti") hereby move this Court to dismiss Plaintiff Uni-Systems, LLC's ("Uni-Systems") entire Third Amended Complaint ("TAC") with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Rossetti, an architect, is accused of infringing two Asserted Patents[1] under 35 U.S.C. § 271(a), (b), and (c) (i.e., direct, induced, and contributory infringement) in connection with design work Rosetti allegedly did on retractable roofs at the Ashe and Armstrong tennis stadiums. Rossetti previously moved to dismiss in the Eastern District of New York ("EDNY") before the case was transferred to this Court. The

---

[1] The "Asserted Patents" are U.S. Patent Nos. 6,789,360 (the "Retention Mechanism Patent") and 7,594,360 (the "Lateral Release Patent").

EDNY Court granted the motion and dismissed all of the induced infringement claims. EDNY Case No. 1:17-cv-147, ECF 265 at 38-39. The direct infringement claims survived, but only "barely" according to the EDNY Court. *Id*. at 24-27.

The currently pending TAC attempts to reintroduce the induced infringement claims and makes additional allegations about direct infringement, but none of these amended allegations state a claim upon which relief can be granted. In short, the lengthy TAC is full of labels and bare conclusions, not the well-pled facts necessary to plausibly show that Rossetti induced, contributed to, and directly infringed the Asserted Patents. Critical elements of each claim are missing.

With respect to induced infringement, for example, no well-pled facts plausibly show that Rossetti had the required knowledge of the Asserted Patents ***and*** knowledge of why specifically the roofs would allegedly infringe ***before*** Rossetti allegedly designed the roofs. After Rossetti allegedly obtained this knowledge, there are no well-pled facts that could plausibly show Rossetti committed any acts with the specific intent to cause the third parties who designed, built, tested, and used the roofs to infringe, or that any acts Rossetti is accused of committing actually caused the third parties to infringe.

With respect to contributory infringement, for example, Rossetti is not accused of supplying any material or apparatus (i.e., a component) for either roof, which is entirely fatal to the contributory infringement claim.

With respect to direct infringement, Rossetti is accused of "using" or "testing" the roofs by approving the third parties' plans to test the roofs, but under recent and controlling Federal Circuit authority not presented to the EDNY Court, these allegations of use and testing do not state a claim. *See, e.g.*, *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 946-47 (Fed. Cir. 2018) (affirming dismissal with prejudice of a similar claim).

Rossetti's counsel contacted Uni-Systems's counsel to explain the nature and legal basis for this motion, had several discussions with Uni-Systems's counsel about the motion, and even provided a draft of the arguments supporting the motion on July 3, 2020. Uni-Systems has not agreed to the relief sought in the motion.[2]

In support of its motion, Rossetti relies upon the brief and exhibits filed herewith. All of the exhibits are referenced in the TAC or were relied upon by Uni-Systems when it sought leave to amend in EDNY to file a prior version of the TAC.

---

[2] In the afternoon of Friday July 10, 2020 (the day this motion was due), Uni-Systems suggested it may stipulate to dismissal of the contributory infringement claims (one of the three types of infringement at issue). Uni-Systems asked for a telephone call and requested that Rossetti confirm it did not supply any material or apparatus (i.e., a component) for either roof accused of infringement. Rossetti promptly confirmed it did not. Uni-Systems then advised its intention was to voluntarily dismiss the contributory infringement claims, but only after Rossetti supplies an affidavit to confirm Rossetti did not supply any components.

WHEREFORE, Rossetti respectfully requests that this Court enter an Order:

1.     Granting its motion to dismiss the entire TAC;

2.     Dismissing the entire TAC with prejudice, and

3.     Granting such other and further relief as the Court deems just and proper.

Dated: July 10, 2020                                    Respectfully submitted,

                                                       */s/ Joshua D. Curry*

Charles W. Browning (P32978)           Joshua D. Curry (GA SBN 117378)
Olivia M. Paglia (P73490)              LEWIS  BRISBOIS  BISGAARD  &
PLUNKETT COONEY                        SMITH LLP
38505 Woodward Avenue, Suite 100       1180  Peachtree  St.  NE,  Ste.  2900
Bloomfield Hills, MI 48304             Atlanta, GA 30309
(248) 901-4000                         (404) 348-8585
cbrowning@plunkettcooney.com           josh.curry@lewisbrisbois.com
opaglia@plunkettcooney.com

                                       *Attorneys for Defendants Rossetti Inc.*
                                       *and Matthew L. Rossetti Architect, P.C.*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNI-SYSTEMS, LLC,**

        Plaintiff,

v.

**ROSSETTI INC., et al.**

        Defendants.

_____/

**No. 2:20-CV-10953-BAF-APP**

Hon. Bernard A. Friedman
Magistrate Judge Anthony P. Patti


## ROSSETTI'S BRIEF IN SUPPORT OF MOTION TO DISMISS
## <u>UNI-SYSTEMS'S THIRD AMENDED COMPLAINT</u>

## STATEMENT OF ISSUES PRESENTED

Whether Plaintiff Uni-Systems, LLC's Third Amended Complaint ("TAC") for direct, induced, and contributory patent infringement under 35 U.S.C. § 271(a), (b), and (c) should be dismissed under Fed. R. Civ. P. 12(b)(6) because the TAC does not allege facts to plausibly show each required element of each of these three different types of patent infringement claims?

**Rossetti's Answer: Yes.**

## STATEMENT OF CONTROLLING AUTHORITY

Generally
- Fed. R. Civ. P. 12(b)(6)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

Induced and Contributory Infringement
- *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015)
- *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)
- *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (en banc)
- *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016)
- *Bonutti Skeletal Innovations, LLC v. Globus Med., Inc.*, No. 14-cv-6650, 2015 U.S. Dist. LEXIS 77492 (E.D. Penn. June 15, 2015)
- *McRee v. Goldman*, No. 11-cv-991, 2012 U.S. Dist. LEXIS 36793 (N.D. Cal. Mar. 19, 2012)
- *Neology, Inc. v. Kapsch Trafficom IVHS, Inc.*, No. 13-cv-2052, 2014 U.S. Dist. LEXIS 131568 (D. Del. Sept. 19, 2014), *R&R adopted* Oct. 22, 2014 Dkt. Order
- *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012)
- *epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. February 21, 2007), *R&R adopted*, 492 F. Supp. 2d 608 (E.D. Tex. 2007)
- *Grecia v. VUDU, Inc.*, No. 14-cv-1220, 2015 U.S. Dist. LEXIS 16256 (N.D. Cal. Feb. 9, 2015)

Contributory Infringement (additional case)
- *Cleveland Clinic Found. V. True Health Diagnostics, LLC*, No. 15-cv-2331, 2016 U.S. Dist. LEXIS 21907 (N.D. Ohio Feb. 23, 2016), *aff'd* 859 F.3d 1352 (Fed. Cir. 2017)

Direct Infringement
- *Grecia v. McDonald's Corp.*, 724 F. App'x 942 (Fed. Cir. 2018)
- *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320 (Fed. Cir. 2017)

## TABLE OF CONTENTS

I.   INTRODUCTION .....................................................................................1

II.   BACKGROUND .......................................................................................2

   A. Iterations of Uni-Systems's Complaint and Prior Dismissal .........................3

   B. Alleged Design and Construction of the Ashe and Armstrong Roofs ............5

III.   STANDARD OF REVIEW.........................................................................8

IV.   ARGUMENT..............................................................................................9

   A. All of the Induced Infringement Claims Under § 271(b) Fail ........................9

     1.   No Actual Knowledge or Willful Blindness Before Designing Roofs ........10

     2.   No Affirmative Culpable Acts Showing a Specific Intent to Infringe After

     Learning of the Alleged Infringement ..............................................17

   B. All of the Contributory Infringement Claims Under § 271(c) Fail...............22

   C. All of the Direct Infringement Claims Under § 271(a) Fail..........................23

V.   CONCLUSION...........................................................................................25

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................8

*Bonutti Skeletal Innovations, LLC v. Globus Med., Inc.*, No. 14-cv-6650, 2015 U.S. Dist. LEXIS 77492 (E.D. Penn. June 15, 2015) ......................................... *passim*

*Cleveland Clinic Found. V. True Health Diagnostics, LLC*, No. 15-cv-2331, 2016 U.S. Dist. LEXIS 21907 (N.D. Ohio Feb. 23, 2016), *aff'd* 859 F.3d 1352 (Fed. Cir. 2017) ............................................................................ 22, 23

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015) ................. 10, 11, 12

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006).................. 18, 20, 21

*epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. February 21, 2007), *R&R adopted*, 492 F. Supp. 2d 608 (E.D. Tex. 2007)........21

*Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016)............................................................9

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ................... *passim*

*Grecia v. McDonald's Corp.*, 724 F. App'x 942 (Fed. Cir. 2018). ........... 23, 24, 25

*Grecia v. VUDU, Inc.*, No. 14-cv-1220, 2015 U.S. Dist. LEXIS 16256 (N.D. Cal. Feb. 9, 2015). ...................................................................................21

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed.Cir.2012) ............................................................................ 22, 23

*Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320 (Fed. Cir. 2017)........................................................................... 24, 25

*McRee v. Goldman*, No. 11-cv-991, 2012 U.S. Dist. LEXIS 36793 (N.D. Cal. Mar. 19, 2012) .......................................................................... 10, 11, 12, 13

*Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014). ................. 19, 20

*Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012). ...................................................................................................................17

*Neology, Inc. v. Kapsch Trafficom IVHS, Inc*., No. 13-cv-2052, 2014 U.S. Dist. LEXIS 131568 (D. Del. Sept. 19, 2014)............................................................13

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342 (Fed. Cir. 2007) .23

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016)...................................................................................................19

*Williams v. CitiMortgage, Inc.*, 498 F. App'x 532 (6th Cir. 2012)............... 5, 9, 16

## TABLE OF EXHIBITS[1]

| # | Description | EDNY ECF | Mich. TAC ¶ |
|---|---|---|---|
| 1 | 2013 Ashe design plan | -- | 44, 46 |
| 2 | 2015 Armstrong design plan | -- | 63 |
| 3 | 05/24/2016 demand letter | -- | 40, 68 |
| 4 | 07/14/2016 email re Rossetti still "guessing" about patents ROS_ESI_00685234 | ECF 383, Ex. 4 | 88, 107 |
| 5 | 2008 roof research | -- | 26 |
| 6 | 8/26/2013 email re Mr. Lanari's communication ROS_ESI_00328973-74 | ECF 383, Ex. 9 | 34-36, 73, 88 |
| 7 | 2014 Ashe walkway blueprint ROS_ESI_00478486 | ECF 383, Ex. 24 | 89 |
| 8 | 2014 Ashe transport mechanism blueprint ROS_ESI_00101247 | ECF 383, Ex. 26 | 90 |
| 9 | 2/15/2016 Ashe test plan ROS_ESI_00593008 | ECF 383, Ex. 25 | 71, 74-75, 92-93 |
| 10 | Armstrong roof erection plan MORGAN 095088 | ECF 383, Ex. 11 | 103 |
| 11 | Armstrong roof mechanization plan HUNT-000962827 | ECF 383, Ex. 17 | 103 |

[1] True and correct copies of all exhibits are being filed contemporaneously. Some of the exhibits are designated confidential and must be filed under seal.

## I.   INTRODUCTION

Plaintiff Uni-Systems, LLC's ("Uni-Systems") alleges that Defendants Rossetti, Inc. and Matthew L. Rossetti Architect, P.C. (collectively, "Rossetti"), who are architects, infringed two Asserted Patents[1] in connection with designing two tennis stadiums with retractable roofs. The Ashe roof is accused of infringing both Asserted Patents; the Armstrong roof is only accused of infringing the one Lateral Release Patent. Third Am. Compl. ("TAC"), Counts I-III. The TAC comingles and conflates allegations of direct, induced, and contributory patent infringement under 35 U.S.C. § 271(a), (b), and (c) against Rossetti and the third party owner, builder, and engineers involved in designing, building, testing, and using the roofs.

When this case was pending in the Eastern District of New York ("EDNY") prior to transfer to this Court, the EDNY Court dismissed all of the induced infringement claims against Rossetti, but the direct infringement claims "barely" survived dismissal. *See* EDNY Case No. 1:17-cv-147, ECF 265 at 24-27, 38-39. The currently pending TAC attempts to reintroduce the induced infringement claims and supplements the direct infringement allegations, but all of the claims still fail.

All of Uni-Systems's induced infringement claims fail for two main reasons. First, the TAC does not allege any facts – as opposed to labels and bare conclusions

---

[1] The "Asserted Patents" are U.S. Patent Nos. 6,789,360 (the "Retention Mechanism Patent") and 7,594,360 (the "Lateral Release Patent").

– plausibly showing that Rossetti had actual notice of or was willfully blind to both of the Asserted Patents *and* the alleged infringement *before* Rossetti allegedly designed the roofs in 2013 and 2015, which are the acts alleged to have induced the direct infringement by the third parties who designed, built, tested, or used the roofs years later. Second, no well-pled facts allege Rossetti committed any culpable acts with the specific intent to encourage infringement by the third parties *after* May 24, 2016 – the earliest date Rossetti allegedly had notice of the Asserted Patents.

All of Uni-Systems's contributory infringement claims also fail for the same reasons as the inducement claims (i.e., lack of knowledge and specific intent before acting). In addition, the contributory infringement claims also fail because roof design plans are not "a material or apparatus" (i.e., a component) for purposes of a contributory infringement claim, and the TAC also has not pled that Rossetti supplied any material or apparatus that has no substantial non-infringing uses and was known to be especially made or especially adapted for use in an infringement.

Finally, Uni-Systems's direct infringement claims, which "barely" survived dismissal under the theory that Rossetti infringed by "use" because it approved the third parties' roof "test plans," fail under recent Federal Circuit authority that makes clear such allegations of "use" are insufficient to state a direct infringement claim.

## II.   BACKGROUND

The action is an extension of Uni-System's ongoing efforts to hold Rossetti

liable for certain third parties' construction, testing, and use of the Ashe and Armstrong roofs. Those third parties include the owner of the tennis stadiums, the United States Tennis Association and USTA National Tennis Center Inc. (collectively, "USTA"); the "design-builder" of the Ashe and Armstrong roofs, Hunt Construction Group, Inc. ("Hunt"); and three engineering companies who designed, built, and/or tested the roofs, Hardesty & Hanover, LLP ("Hardesty"), Morgan Engineering Systems, Inc., Morgan Kinetic Structures, Inc., and Morgan Automation, Inc. (collectively, "Morgan"), and Geiger Gossen Campbell Engineers, P.C. ("Geiger"). TAC, ¶¶10, 27, 43. Rossetti and these other parties were all sued together in the EDNY in January 2017, but because venue was lacking in EDNY, Rossetti's case was transferred to Michigan in April 2019.[2]

### A.    Iterations of Uni-Systems's Complaint and Prior Dismissal

The currently pending TAC is at least Uni-Systems's fifth attempt to plead direct, induced, and contributory infringement claims against Rossetti. With the consent of the parties to streamline the case and avoid briefing on a motion to amend, Uni-Systems's was permitted to amend its original complaint in a First Amended Complaint ("FAC") filed in EDNY in October 2017. *See* EDNY ECF 151 (FAC), 160 (10/24/2017 hearing transcript). The FAC was supposed to be the "best iteration

---

[2] Morgan's case was transfer to N.D. Ohio Case No. 5:20-cv-878. The EDNY case remains pending against the other parties. *See* EDNY Case No. 1:17-cv-147.

of the complaint that [Uni-Systems] could possibly proffer," such that Uni-Systems's claims either would or would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) brought in EDNY against the FAC. EDNY ECF 160 at 7:2-13.

In a lengthy order, the EDNY Court ruled in 2018 that Uni-Systems's induced infringement allegations failed to state claims against Rossetti under either Asserted Patent and for both roofs. EDNY ECF 265 at 38-39. The EDNY Court also dismissed the claims alleging that Rossetti, either alone or by "controlling or directing" one or more of the third parties, directly infringed the Asserted Patents by making, using, selling, offering to sell, or importing the roof designs. *Id.* at 24-27. The sole claim against Rossetti to survive was the claim that Rossetti "used" the roofs when it approved "test plans" submitted by the third parties, which the EDNY Court found "barely state[d] a cognizable claim for direct patent infringement." *Id.* at 27.

After its inducement claim was dismissed, Uni-Systems filed a Second Amended Complaint ("SAC") in December 2018, but the SAC did not attempt to replead an induced infringement claim against Rossetti. *See* EDNY ECF 325.

In July 2019, Uni-Systems sought to amend again and file a previous version of the TAC to reintroduce the induced infringement claims against Rossetti. As part of its order permitting Uni-Systems to move to file the TAC, the EDNY Court required Uni-Systems to submit documents and annotations specially indicating which facts allegedly supported the induced infringement claims. *See* EDNY ECF

4

8/8/2019 Dkt. Order. In response, Uni-Systems's filed a motion to amend explaining why Rossetti allegedly had the specific intent to induce infringement, and attached numerous supporting exhibits.[3] *See* EDNY ECF 383 at 5.

The EDNY Court did not rule on Uni-Systems's motion to file the TAC before Rossetti was transferred to Michigan. Following transfer and again to streamline the case, Rossetti consented to an updated version of the TAC (i.e., fifth iteration of the complaint) being filed and reserved the right to move to dismiss.

### B.      Alleged Design and Construction of the Ashe and Armstrong Roofs

Uni-Systems alleges that Rossetti had designed the Ashe roof by 2013 and the Armstrong roof by 2015. TAC, ¶¶31 (Ashe design deadline 10/31/2013), 54-55 & 78 (Armstrong designs dated 2015 released in 6/3/2016 RFP), 44, 46 & 63 (accused design plans); *see* Exs. 1 and 2 hereto (design plans quoted in TAC at ¶¶44, 46, 63 dated 2013 for Ashe and 2015 for Armstrong). Thereafter, the TAC alleges the third parties – ***not Rossetti*** – built the roofs over the next several years, the roofs were tested by the third parties after being built, and the USTA began operating and

---

[3] These exhibits, which Uni-Systems specifically referred to in EDNY as the best support for the allegations in its TAC, directly contradict the allegations made in the TAC. Thus, many exhibits are attached hereto because on a motion to dismiss the Court is not required to accept allegations in the complaint that are contradicted by exhibits central to the claims pled. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 534, 536 (6th Cir. 2012) ("Indeed, if a factual assertion in the pleadings is inconsistent with a document attached [or referred to] for support, the Court is to accept the facts as stated in the attached document.") (quotation marks omitted).

benefiting from the use of the Ashe roof in August 2016 and the Armstrong roof in August 2018. *See* TAC, ¶¶11, 27, 49-50, 100.

Rossetti is accused of three different types of infringement: direct, induced, and contributory infringement. With respect to direct infringement, the allegation made against Rossetti in the TAC is that it "reviewed" and "approved" the "test plans" submitted by the third parties for those third parties to test the roofs. TAC, ¶¶74-75, 92-93, 110. Rossetti is not accused of testing or using the roofs itself. *Id.*

With respect to the induced and contributory infringement allegations, it is critical to focus on exactly when Rossetti allegedly first had knowledge of the Asserted Patents, first had knowledge of why the roof designs would allegedly infringe, and the specific acts Rossetti took after it allegedly acquired this knowledge. Thus, it is helpful to categorize the corresponding TAC allegations into two periods: (1) before and (2) after Rossetti allegedly had the requisite knowledge.

The earliest that Uni-Systems alleges Rossetti had any specific knowledge of the Asserted Patents is on May 24, 2016 when Uni-Systems sent a demand letter. TAC, ¶¶40, 68; Ex. 3 hereto (5/24/2016 demand letter). The demand letter listed four patents, including the two Asserted Patents, and stated "the Ashe . . . roof design infringes multiple Uni-Systems Patents" without providing any further details. Ex. 3 at 1. The Armstrong roof is not mentioned in the demand letter. *See id.* The TAC also concedes that the 5/24/2016 letter did not identify the patents asserted or the

basis for the infringement, and that Rossetti was still left "guessing" on July 14, 2016 about the patents and reasons for the alleged infringement, as an exhibit Uni-Systems submitted in EDNY to support the TAC confirms. TAC, ¶¶88, 107; *see* EDNY ECF 383 at 5 (citing EDNY Ex. 4 at ROS_ESI_00685234, Ex. 4 hereto).

The TAC vaguely references "summer 2016" as the date that Rossetti was notified of the basis for the alleged infringement of the Asserted Patents with respect to Ashe and July 6, 2017 as the date for Armstrong. TAC, ¶¶59-60, 88, 107.

Prior to May 24, 2016, the TAC makes two allegations about Rossetti's knowledge of the Asserted Patents and knowledge of why the roofs would allegedly infringe: (1) in 2008, Rossetti allegedly prepared a document titled Fixed and Operable Roof Research for USTA ("2008 Roof Research") that referred generally to Uni-Systems having unspecified patents on stadium roof designs and (2) on August 26, 2013 a former Uni-Systems employee named John Lanari told Hunt, who informed Rossetti, that the Ashe roof would infringe an unspecified Uni-Systems patent on a linear bearing. TAC, ¶¶26, 34-35, 73, 88; Ex. 5 hereto (2008 Roof Research); EDNY ECF 383 at 5 (citing EDNY Ex. 9 at ROS_ESI_00328973, Ex. 6 hereto (8/26/2013 email re Mr. Lanari's communication)). Significantly, however, neither the 2008 Roof Research nor the 8/26/2013 communication with Mr. Lanari is alleged to have specially identified either of the Asserted Patents or explained why the Ashe or Armstrong roofs would allegedly infringe the Asserted Patents. *See id.*

After May 24, 2016, the TAC alleges that Rossetti's sole role was to "review" and "approve" the third parties' blueprints and test plans for them to build, test, and use the roofs. TAC, ¶¶71, 74-75, 86, 88-93, 103, 101, 103-104, 110.

## III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels" and "legal conclusions," such as "[t]hreadbare recitals of all the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, the Court may consider the complaint itself and "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt*

*v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams*, 498 F. App'x 536. The Court also is not "constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Id.* (quotation marks omitted).

## IV.  ARGUMENT

### A.  All of the Induced Infringement Claims Under § 271(b) Fail

All of Uni-Systems's induced infringement claims must be dismissed. First, the TAC does not allege facts, instead of mere conclusions, to show (a) Rossetti actually knew of the Asserted Patents when it designed the Ashe and Armstrong roofs ***and also*** actually knew when it designed those roofs that they infringed Asserted Patents, or (b) Rossetti was "willfully blind" to the Asserted Patents and the infringement when it designed the roofs. Second, no well-pled facts show that Rossetti, after learning of the alleged infringement, engaged in affirmative acts to induce (e.g., persuade, lead, influence) the third parties to make, test, or use the roofs with the specific intent to cause the third parties to infringe of the Asserted Patents.

To state a claim for induced infringement, plaintiff must plausibly allege that: "(1) with knowledge of or willful blindness to the existence of the patent-in-suit; (2) the defendant engaged in affirmative acts to induce (e.g., by persuading, leading, or

influencing) a third party to perform acts that; (3) the defendant knew constituted infringement of the patent-in-suit (or was willfully blind to that fact); (4) with the specific intent to cause such infringement; and which (5) resulted in the third party directly infringing the patent-at-issue." *Bonutti Skeletal Innovations, LLC v. Globus Med., Inc.*, No. 14-cv-6650, 2015 U.S. Dist. LEXIS 77492, *13-14 (E.D. Penn. June 15, 2015) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) and *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 759-66 (2011)).

### 1. No Actual Knowledge or Willful Blindness Before Designing Roofs

### a. No Actual Knowledge Before Designing Roofs

"[P]utting *Global-Tech* together with *Iqbal*, the question before the Court on [a] motion[] to dismiss is whether [Uni-Systems] has plead sufficient facts . . . for the Court to infer that [Rossetti] had knowledge of [(1) Uni-Systems's Asserted Patents] ***and*** [(2)] that the [roofs on the Ashe and Armstrong stadiums] infringed on [those] patents" at the time of Rossetti's alleged acts of inducement (i.e., when Rossetti allegedly created the designs). *See McRee v. Goldman*, No. 11-cv-991, 2012 U.S. Dist. LEXIS 36793, *14 (N.D. Cal. Mar. 19, 2012) (dismissing induced infringement claims where all acts alleged to induce the construction of an infringing canopy occurred ***before*** defendant had knowledge of the patent or why the canopy would infringe) (all emphasis in quotations was added unless otherwise noted).

Uni-Systems alleges Rossetti's design work on the Ashe and Armstrong roofs

induced the third parties to directly infringe the Asserted Patents by making and using roofs built from Rossetti's designs. TAC, ¶¶72, 87, 102. The TAC alleges Rossetti had designed the Ashe roof by 2013 and the Armstrong roof by 2015. *Id.* at ¶¶31, 54-55, 78. Indeed, all of the design phase portions of the drawings quoted in the TAC are **dated in 2013** for Ashe and **dated in 2015** for Armstrong. *Id.* at ¶¶44, 46, 63; *see* Exs. 1 and 2 (2013 and 2015 design plans quoted in TAC).

Critically, however, Uni-Systems does not – and cannot – allege that Rossetti was put on actual notice of the Asserted Patents until **May 24, 2016** at the earliest. TAC, ¶40. May 2016 is ***after*** Rossetti engaged in all of the design work in 2013 and 2015 that is alleged to have induced the third parties to infringe the Asserted Patents. This conclusion alone is fatal to all of Uni-Systems induced infringement claims because knowledge of the existence of the patents ***before*** engaging in the affirmative acts (i.e., Rossetti's design work) alleged to have induced infringement by a third party (i.e., the making, testing, and using the roofs by the third parties) is an absolute prerequisite to stating a claim for induced infringement. *See Commil*, 135 S. Ct. at 1928; *Global-Tech*, 563 U.S. at 759-66; *see also Bonutti*, U.S. Dist. LEXIS 77492, *13-14 and *McRee*, 2012 U.S. Dist. LEXIS 36793, *14 (both dismissing induced infringement claims where the complaint failed to allege knowledge of the patent before the accused infringer engaged in the acts alleged to constitute inducement).

Moreover, the TAC concedes the 5/24/2016 demand letter ***did not*** identify the

patents being asserted or explain the basis for the allegedly infringement. TAC, ¶¶88, 107; Ex. 4 (Rossetti was still "guessing" about the patents as of 7/14/2016). The earliest date by which Uni-Systems alleges Rossetti had knowledge of why the Asserted Patents were allegedly infringed is "Summer 2016" for Ashe and July 6, 2017 for Armstrong. TAC, ¶¶59-60, 88, 107. Thus, Uni-Systems also has failed to state a claim for induced infringement against Rossetti with respect to both the Ashe and Armstrong roofs because Uni-Systems has not alleged any facts to show that Rossetti had any knowledge of why the Ashe or Armstrong roofs would allegedly infringe the Asserted Patents *before* Rossetti engaged in the design work in 2013 for Ashe and 2015 for Armstrong that is accused of inducing infringement. *See Commil*, 135 S. Ct. at 1928; *Global-Tech*, 563 U.S. at 759-66; *Bonutti*, U.S. Dist. LEXIS 77492, *13-14; *McRee*, 2012 U.S. Dist. LEXIS 36793, *14.

Recognizing this serious deficiency in its pleading, which previously resulted in the EDNY Court dismissing all of Uni-Systems's induced infringement claims against Rossetti as noted above (*see* EDNY ECF 265 at 38-39), Uni-Systems tries for the fifth time in the TAC to fill this gap in Rossetti's alleged knowledge. Uni-Systems relies on only two specific allegations of knowledge before May 24, 2016:

1. In 2008, Rossetti submitted "Roof Research" that "illustrates Rossetti's knowledge of multiple Uni-Systems retractable stadium roof designs and that Uni-Systems holds patents for these designs. For example, Rossetti's [2008] Roof Research document states that Uni-Systems has ten patents and five pending applications covering the operation of movable structures and specific mechanisms,

including the patented lateral release mechanism in retractable roofs." TAC, ¶26; *see* Ex. 5 (2008 Roof Research).

2. On August 26, 2013, "[Mr.] Lanari, at the time a former Uni-Systems employee, reviewed blueprints of the Ashe Retractable Roof and notified Hunt that Uni-Systems held the patent for the linear bearing depicted in the blueprints. This was in reference to the Lateral Release patent, which Uni-Systems developed in connection with its work on the Cardinals Stadium roof." TAC, ¶34. "Hunt informed Rossetti about Mr. Lanari's notification and asked Rossetti if Uni-Systems held the patent for the depicted linear bearing." *Id.* at ¶35; *see* Ex. 6 (8/26/2013 email re Lanari communication).

But neither set of facts alleges "the plaintiff: (a) alerted the defendant, either orally or in writing, to the fact that it was inducing a third party to infringe the plaintiff's patent, ***and*** (b) the plaintiff explained to the defendant how the induced acts constituted infringement," which are both elements required to state an induced infringement claim. *See Bonutti*, 2015 U.S. Dist. LEXIS 77492, *18; *McRee*, 2012 U.S. Dist. LEXIS 36793, at *15-16; *see also Neology, Inc. v. Kapsch Trafficom IVHS, Inc.*, No. 13-cv-2052, 2014 U.S. Dist. LEXIS 131568, at *9-21 (D. Del. Sept. 19, 2014), *R&R adopted* Oct. 22, 2014 Dkt. Order (dismissing inducement claim where plaintiff had not notified defendant with specificity how it infringed).

The TAC does not allege the 2008 Roof Research identifies either of the two Asserted Patents – or any other Uni-Systems's patent for that matter – so it fails to support a claim for induced infringement for that reason alone. *See* Ex. 5 (2008 Roof Research referring only generally to patents and applications, without identifying any specific patent). And even if the two Asserted Patents had been identified, the

13

2008 Roof Research still could not have provided Rossetti with any knowledge of *why* the Ashe or Armstrong roofs would allegedly infringe. The 2008 Roof Research never even uses the word "infringement" or a variant thereof, and it says nothing about why any particular roof design could infringe any Uni-Systems patent. And – more importantly – this 2008 document could not possibly explain why roof designs not even created until over five years later in 2013 and 2015 could infringe as of 2008. Further, the Lateral Release Patent (one of the two patents) did not even issue until 2009, so it is impossible for it to have been infringed in 2008.

The TAC does not allege the 8/26/2013 communication from Mr. Lanari referenced either of the two Asserted Patents, so these allegations also fail to support a claim for induced infringement for this reason alone. *See* TAC, ¶¶34-35. Instead, Uni-Systems merely alleges Rossetti was informed "that Uni-Systems held [an unspecified] patent for the linear bearing depicted in the [Ashe] blueprints." *Id.* at ¶34; *see* Ex. 6 (8/26/2013 email confirming Mr. Lanari *did not* identify any specific Uni-Systems patent). Moreover, Mr. Lanari's communication also fails to support a claim for induced infringement for a second reason because Uni-Systems has not alleged that Mr. Lanari explained why the induced acts (i.e., building the Ashe roof) would constitute infringement of the Asserted Patents. *See* TAC, ¶¶34-35; *see* Ex. 6 (8/26/2013 email confirming a different Uni-Systems patent on a "linear bearing" was located and discussing why it was not infringed).

### b.  No Willful Blindness Before Designing Roofs

Uni-Systems cannot make up for its failure to plead actual knowledge by relying on willful blindness as a substitute. Willful blindness requires a plaintiff to plead facts, not mere conclusions, that the defendant (1) subjectively believed there was a high probability a particular fact existed or was true, and (2) took deliberate actions to avoid learning of the fact. *Global-Tech*, 563 U.S. at 769. To do so, "a plaintiff must identify affirmative actions taken by the defendant to avoid gaining knowledge of the patents-in-suit or of acts that constituted patent infringement." *Neology*, 2014 U.S. Dist. LEXIS 131568, at *14-15. In the example of willful blindness cited by the Supreme Court in G*lobal-Tech*, defendant obtained a version of plaintiff's patented product in Hong Kong so it could avoid receiving a model with the patent number stamped on the product, copied the product, and failed to inform its patent attorney of the patent when seeking an opinion. 131 S. Ct. at 2071.

Uni-Systems alleges Rossetti was willfully blind to the Asserted Patents and the infringement before designing the Ashe roof in 2013 and Armstrong roof in 2015 because Rossetti "failed to investigate" Mr. Lanari's 8/26/2013 claims about an unidentified Uni-Systems's patent on a "linear bearing." TAC, ¶¶36, 73, 88, 96. This is the ***only*** specific allegation of willful blindness that Uni-Systems makes in the TAC. But this allegation of willful blindness is directly contradicted by the 8/26/2013 email concerning Mr. Lanari's communication, which reveals that

Rossetti *did investigate* whether Uni-Systems may have relevant patents. In response to Mr. Lanari's concerns, Rossetti was advised that "[w]e looked into any Uni-Systems patents for the linear bearing . . . [and] the Uni-Systems patent [we located[4]] does not apply to the [Ashe roof design]." Ex. 6. Because Uni-Systems's allegation of a "failure to investigate" is contradicted by an exhibit further describing the communication, the Court cannot accept this allegation of a "failure to investigate" as true. *See Williams*, 498 F. App'x at 536 (complaint allegation contradicted by an exhibit concerning the allegation is trumped by the exhibit).

In any event, Uni-Systems has pled its own willful blindness theory right back out of court because the TAC alleges and the 8/26/2013 email confirms that Rossetti *did not* ignore the possibility that Uni-Systems might have patents, Rossetti *did not* take deliberate actions *to avoid* learning about Uni-Systems's patents, and Rossetti *continued to "guess" (i.e., investigate)* about Uni-Systems patents up until July 2016 when Uni-Systems finally identified the Asserted Patents. *See* TAC, ¶107 (conceding Rossetti was still "guessing" about the patents in July 2016 because Uni-Systems still had not identified the specific patents at issue yet); Ex. 4 (7/14/2016 email re Rossetti still "guessing"); Ex. 6 (8/26/2013 email re patent investigation). A "complaint that fails to identify *any affirmative actions* taken by the defendant *to*

---

[4] Patent No. 8,186,107, which is *not* one of the Asserted Patents.

16

*avoid* gaining actual knowledge of the patent-in-suit is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*" and must be dismissed. *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012). Here, the TAC pleads exactly the opposite of the deliberate avoidance required to state a claim for induced infringement based on willful blindness. *See Global-Tech*, 563 U.S. at 769; *Neology*, 2014 U.S. Dist. LEXIS 131568, 2014 WL 4675416, at *5.

## 2. No Affirmative Culpable Acts Showing a Specific Intent to Infringe After Learning of the Alleged Infringement

Uni-Systems's induced infringement allegations also fail to state a claim because the TAC does not allege any plausible facts to show Rossetti engaged in affirmative culpable acts with the specific intent to encourage the third parties to infringe by making, testing, or using the Ashe and Armstrong roofs ***after*** Rossetti was notified of the Asserted Patents and reasons for the alleged infringement.

Accepting as true that Rossetti was on notice as of May 24, 2016 of why the third parties would allegedly directly infringe the Asserted Patents by making, testing, and using the Ashe and Armstrong roofs,[5] Rossetti is not accused of designing an entirely new or different roof for the Ashe or Armstrong Stadium for the third parties to make, test, or use after May 24, 2016. To the contrary, the TAC

---

[5] As noted above, the earliest alleged notice date is "summer 2016" for the Ashe roof and July 6, 2017 for the Armstrong roof.

pleads the Ashe and Armstrong roofs were designed in 2013 and 2015 respectively. *E.g.,* TAC, ¶¶44, 46, 63; Exs. 1 and 2. The only specific acts that Uni-Systems alleges Rossetti engaged in ***after*** May 24, 2016 are all acts of "reviewing" and "approving" blueprints or test plans ***submitted by the third parties*** to make, test, and use the Ashe and Armstrong roofs. *E.g.*, TAC, ¶¶71, 86, 101.[6] But none of these acts of reviewing or approving state a claim for induced infringement.

The Supreme Court has explained that "actively induces infringement" means "the taking of affirmative steps to bring about the desired result" through actions "'[t]o lead on; to influence; to prevail on; to move by persuasion or influence.'" *Global-Tech*, 563 U.S. at 760. "[Active] inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). The inducer must have "actively and knowingly aid[ed] and abet[ed] another's direct infringement." *Id.* at 1305. "[T]he patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent

---

[6] TAC, ¶¶89-90 allege Rossetti designed an Ashe roof walkway and transport mechanism with knowledge of the Lateral Release Patent that induced infringement, but Rossetti's alleged involvement occurred in 2014. *See* EDNY ECF 383-33 Annotated TAC at ¶¶154-55 (citing EDNY Ex. 24 at ROS_ESI_00478486, Ex. 7 hereto and EDNY Ex. 26 at ROS_ESI_00101247, Ex. 8 hereto (both dated 2014)).

infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). "Absent the knowledge and affirmative act of encouragement, no party could be charged with inducement." *Id.* Moreover, the inducer's affirmative acts must actually cause the infringement by the direct infringer. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330-31 (Fed. Cir. 2016). "[No] liability exists [] where no inducement actually occurred." *Id.*

Alleging that Rossetti reviewed and approved a third party's blueprints or test plans to make, test, or use the Ashe[7] or Armstrong roofs, which is all Rossetti is accused of doing here after allegedly having knowledge of the Asserted Patents, cannot state a claim for induced infringement. The TAC alleges no facts to plausibly show that Rossetti – as opposed to the third parties acting on their own initiative – caused the third parties to infringe each limitation of the Asserted Patents. Rossetti has not been accused of taking or encouraging any specific action or providing any specific instructions to the third parties to induce them to make, test, or use the roofs in a manner that would infringe each limitation of the Asserted Patents. *See Power Integrations*, 843 F.3d at 1330-31 (no active inducement where the accused act of inducement did not actually cause the direct infringement); *DSU Med.*, 471 F.3d at

---

[7] The sole allegation with respect to Ashe concerns approval of a test plan in *February 2016*. *See* TAC, ¶¶74, 92; EDNY ECF 383 at 5 (citing EDNY Ex. 25 at ROS_ESI_00593008, Ex. 9 hereto (Ashe test plan dated 2/15/2016)). February 2016 is *before* notice of the Asserted Patents was given in May 2016, so approving the test plan cannot show a specific intent to induce infringement for the Ashe roof.

1306 (no active inducement without "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities"); *Microsoft*, 755 F.3d at 904 (allegations sufficient where inducer provided specific instructions to use the product in a manner that would infringe each limitation of the patent).

None of the examples of specific intent to cause infringement that Uni-Systems previously cited to support the TAC's allegations of induced infringement are in the class of culpable acts specifically directed to aiding and abetting or actively encouraging the third parties to directly infringe each limitation of the Asserted Patents, which is what is required to state a claim for induced infringement under *Global-Tech*, *DSU Medical*, and *Microsoft*, as discussed above. For example, Rossetti's entire contribution to the February 2016 Ashe roof "test plan" was to comment that the plan was "[a]ccepted for [the] record" and "[m]ust receive review/approval from Owner's rep & engineer." Ex. 9 at ROS_ESI_00593008. With respect to the Armstrong roof, Uni-Systems previously cited Rossetti's comments that the Armstrong "Roof Erection Procedure" was "reviewed for reference" and the Armstrong "Roof Mechanization [Equipment]" should "receive [a] 3 coat paint system" to support the TAC's allegations of specific intent to infringe. *See* EDNY ECF 383 at 5 (citing EDNY Ex. 11 at MORGAN 095088, Ex. 10 hereto and EDNY Ex. 17 at HUNT-000962827, Ex. 11 hereto).

Other courts that have confronted similar questions about review and approval of plans have concluded that merely reviewing and approving work orders that allegedly resulted in a third party making and using an infringing system was not enough to show active inducement of infringement. *See, e.g.*, *epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 636-40 (E.D. Tex. February 21, 2007), *R&R adopted*, 492 F. Supp. 2d 608, 616 (E.D. Tex. 2007). This conclusion makes sense because "inaction or failure to stop another's continued direct infringement" cannot be induced infringement. *Grecia v. VUDU, Inc.*, No. 14-cv-1220, 2015 U.S. Dist. LEXIS 16256, at *29 (N.D. Cal. Feb. 9, 2015). Alleging that Rossetti permitted or approved of the third parties continuing to build, test, and use roofs by doing nothing to stop them or change[8] the roof designs after Rossetti learned the roofs would allegedly infringe does not state a claim for induced infringement. *See id.* At *30-32 (allegation that a party supplying infringing services under a contract entered before learning of the patent was required to stop providing those

---

[8] The TAC cites to Rossetti's efforts to "design around" the Asserted Patents (i.e., change the designs to be non-infringing), which it mischaracterizes as an effort to hide or mask infringing elements. TAC, ¶¶13, 57-59, 61. These redesign efforts cannot plausibly show that Rossetti possessed the specific intent to infringe when it originally created the designs or attempted to redesign them. "The principle of liability for 'aiding and abetting' the wrongful acts of others is not imposed retrospectively, to make illegal an act that was not illegal when it was done." *Id.* at *28 (quotation marks omitted). Suggesting changes to prevent infringement are not affirmative acts to ***encourage infringement***, which is what must be pled to support an inducement claim. *See DSU Med.* 471 F.3d at 1305-06.

services to prevent the direct infringement from continuing after learning of the patent failed to state an inducement claim).

### B.     All of the Contributory Infringement Claims Under § 271(c) Fail

Contributory infringement under § 271(c), like induced infringement under § 271(b), requires the accused infringer to know of the patents and have the specific intent to cause the infringement when the infringer takes the acts alleged to have contributed to third party's direct infringement. *Global-Tech*, 563 U.S. at 765. Thus, all of Uni-Systems's contributory infringement claims fail for the same reasons discussed above in § IV.A with respect to induced infringement under § 271(b).

All of Uni-Systems's contributory infringement claims also fail for two independent reasons. "'Contributory infringement occurs if a party sells or offers to sell, a ***material or apparatus*** for use in practicing a patented process, and that ***'material or apparatus'*** is material to practicing the invention, has no substantial non-infringing uses, and is known by the party to be especially made or especially adapted for use in an infringement of such patent.'" *Cleveland Clinic Found. V. True Health Diagnostics, LLC*, No. 15-cv-2331, 2016 U.S. Dist. LEXIS 21907, at *20-22 (N.D. Ohio Feb. 23, 2016), *aff'd* 859 F.3d 1352, 1363-64 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed.Cir.2012)). "'Under the plain language of the statute, a person who provides a service that assists another in committing patent infringement may be

subject to liability under section 271(b) for active inducement of infringement, but not under section 271(c) for contributory infringement.'" *Id.* (quoting *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1357 (Fed. Cir. 2007)).

First, the design plans Rossetti is accused of providing are not a "material or apparatus" for purposes of a contributory infringement claim. *See Cleveland Clinic*, 2016 U.S. Dist. LEXIS 21907, at *20-22, *aff'd* 859 F.3d at 1363-64 (affirming dismissal of contributory infringement claim based on defendant's provision of "lab reports" because the reports were not a "material or apparatus").

Second, the TAC does not allege that any material or apparatus Rossetti is accused of supplying "'has no substantial non-infringing uses, and is known by [Rossetti] to be especially made or especially adapted for use in an infringement of [the Asserted] [P]atent[s],'" which means these two elements of a § 271(c) claim also have not been pled. *See id.* (quoting *In re Bill of Lading*, 681 F.3d at 1337).

## C.   All of the Direct Infringement Claims Under § 271(a) Fail

The only direct infringement claim against Rossetti that survived the EDNY Court's dismissal order was the claim that Rossetti directly infringed through "use" of the roofs by "reviewing" and "approving" the third parties' "test plans" for the Ashe and Armstrong roofs. EDNY ECF 265 at 25-27. In a recent decision, the Federal Circuit closed "a gap in [its] jurisprudence on what constitutes 'use' under § 271(a)." *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 945 (Fed. Cir. 2018).

In *Grecia*, the Federal Circuit affirmed dismissal with prejudice of a direct infringement claim where McDonalds was accused of "using" a patented credit card authorization system controlled by third parties because McDonalds submitted requests to the system and received responses each time it accepted a credit card for payment. 724 F. App'x at 944, 946-47. Because McDonalds was alleged to have "used" the system by "benefit[ing] from the system as a whole," as opposed to actually controlling and using each and every element of patented system, the Federal Circuit held that McDonald's could not be a "user" of the patented system as a matter of law. *Id.* at 947. The Federal Circuit clarified that to directly infringe based on "use" or "testing," the accused direct infringer "must 'benefit from each claimed component,' i.e., from 'each and every element of the claimed system.'" *Id.* (citing *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) ("testing" that benefited the customers who used the system was not a "use" by the supplier of the system for purposes of direct infringement)).

Uni-Systems has not – and cannot – plausibly allege that Rossetti controlled and benefited from the "use" or "testing" of each and every element of the roof system claimed in the Asserted Patents. Instead, it is plainly apparent from the TAC that any benefit to Rossetti was merely a general and vague benefit, and that only the third parties – not Rossetti – controlled and benefited from the use of each and every element of the roofs alleged to infringe. *See, e.g.*, TAC, ¶¶27, 49-50 (Hunt

hired Rossetti and Hunt had "overall responsibility for the construction") and ¶¶78, 98, 100 (alleging that the third parties, in particular the stadium owner, enjoyed the use and benefit of the roofs). Thus, the allegation that Rossetti, directly or vicariously, "used" the roofs, including by "testing" them or by approving other's "test plans," falls short of what is necessary to plead a direct infringement claim based on use. *See Grecia*, 724 F.3d at 947; *Intellectual Ventures*, 870 F.3d at 1331; *see also Bonutti*, 2015 U.S. Dist. LEXIS 77492, at *9-10 (dismissing vicarious use claim that lacked specific facts to show how one party actually controlled the other).

## V.   CONCLUSION

Uni-Systems has now had five chances to plead its direct, induced, and contributory infringement claims against Rossetti, but Uni-Systems's allegations still remain fatally deficient and must be dismissed. No leave to amend for a sixth time should be granted. Five attempts are enough.

Dated: July 10, 2020                      Respectfully submitted,

                                          _/s/Joshua D. Curry_____
Charles W. Browning (P32978)              Joshua D. Curry (GA SBN 117378)
Olivia M. Paglia (P73490)                 LEWIS  BRISBOIS  BISGAARD  &
PLUNKETT COONEY                           SMITH LLP
38505 Woodward Avenue, Suite 100          1180  Peachtree  St.  NE,  Ste.  2900
Bloomfield Hills, MI 48304                Atlanta, GA 30309
(248) 901-4000                            (404) 348-8585
cbrowning@plunkettcooney.com              josh.curry@lewisbrisbois.com
opaglia@plunkettcooney.com
                                          *Attorneys for Defendants Rossetti Inc.*
                                          *and Matthew L. Rossetti Architect, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the date indicated below the foregoing document with any attachments was filed using the CM/ECF System, which caused counsel of record for the parties to be served by electronic mail, as more fully reflected on the notice of electronic filing.

Dated: July 10, 2020                    _/s/Joshua D. Curry_____